**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

GEORGE NATAL, JR.,

                                        Plaintiff,                    20-cv-07452 (VF)

                    -against-                                        **OPINION & ORDER**

KILOLO KIJAKAZI,
Commissioner of Social Security

                                        Defendant.

-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

Plaintiff George Natal, Jr. seeks judicial review of a final determination by Defendant,

the Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying

Natal's application for Supplemental Security Income benefits under Title XVI of the Social

Security Act (the "Act").[1] Before the Court is Natal's motion for judgment on the pleadings and

the Commissioner's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. For the reasons set forth below, Natal's motion is **DENIED**,

and the Commissioner's cross-motion is **GRANTED.**

---

[1] The named defendant when this action commenced was Andrew Saul, then-
Commissioner of the SSA. On July 9, 2021, Kilolo Kijakazi became Acting Commissioner of the
SSA, and is therefore substituted as named defendant. See Fed. R. Civ. P. 25(d) (permitting
automatic substitution of a party who is a public official sued in his official capacity when the
public official "ceases to hold office" while a suit is pending).

## BACKGROUND[2]

### A.  Procedural History

On May 22, 2017, Natal filed his application for Supplemental Security Income benefits ("SSI"), alleging March 1, 2017, as the onset date of his disability. SSA Administrative Record ("R.") at 59-61, ECF No. 20. When Natal applied for SSI, he alleged disability based on depression, stress, "mental issues," high blood pressure, and anxiety. Id. at 61, 199. Natal's claim for SSI was initially denied on August 11, 2017, id. at 70-71, and on August 22, 2017, Natal filed a written request for a hearing before an administrative law judge, id. at 86-88.

On March 22, 2019, Natal and his counsel, Tanusha Thurasingam, appeared before Administrative Law Judge Alexander Levine (hereinafter, the "ALJ") at a hearing in the Bronx, New York. Id. at 37-58. On July 10, 2019, the ALJ issued a written decision, finding that Natal had not been under a disability within the meaning of the Act from March 1, 2017, through the date of the decision. Id. at 13-30. Natal requested that the SSA Appeals Council review the ALJ's decision. Id. at 163-65. His request was denied on July 1, 2020. Id. at 1-7. That denial made the July 10, 2019 decision of the ALJ the final action of the Commissioner. See Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) ("If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.") (citation omitted).

On September 11, 2020, after exhausting his administrative remedies, Natal commenced the instant action seeking judicial review of the ALJ's decision and requesting that this Court either modify the decision and grant Natal SSI payments or, alternatively, remand for reconsideration of the evidence. See Complaint, ECF No. 1. On June 1, 2022, the Commissioner

---

[2] Page citations herein to documents filed on ECF are to the original pagination in those document.

filed the Administrative Record, which constituted his answer. ECF No. 20. Thereafter, on July

27, 2022, Natal moved for judgment on the pleadings and submitted a memorandum of law in

support of his motion, requesting that the Court reverse the ALJ's decision or remand for further

proceedings. ECF Nos. 23-24. On October 5, 2022, the Commissioner submitted his opposition

and a cross-motion for judgment on the pleadings. ECF Nos. 25-26. Natal filed a reply to the

Commissioner's opposition on October 26, 2022. ECF No. 27.

### B. **Medical Evidence**

The parties' memoranda in support of their motions for judgment on the pleadings

provide summaries of the medical evidence contained in the administrative record. See Pl.'s

Br. at 1-8, ECF No. 24; Def.'s Br. at 5-14, EFC No. 26. Having examined the record, the

Court concludes that the parties have accurately stated its contents. Although the parties

focus on different aspects of the record at times, there are no inconsistencies in the parties'

recounting of the medical evidence. The Court therefore adopts the parties' summaries as

complete for purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-

CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties'

summaries of medical evidence where parties did not dispute recitation of relevant facts);

Scully v. Berryhill, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' summaries

where they were "substantially consistent with each other" and neither party objected to the

opposing party's summary). The medical evidence in the record is discussed below to the

extent necessary to address the issues raised in the pending cross-motions.

<u>**DISCUSSION**</u>

A. <u>**Legal Standards**</u>

1. <u>Judgment on the Pleadings</u>

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> (internal quotation marks and citation omitted).

2. <u>Judicial Review of the Commissioner's Decision</u>

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); <u>accord</u> <u>Greek v. Colvin</u>, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); <u>see generally</u> 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Substantial evidence is "more than a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 407 (1971) (quoting <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>accord</u> <u>Greek</u>, 802 F.3d at 374-75; <u>Burgess v. Astrue</u>, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation

marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

3.   Commissioner's Determination of Disability

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id.

§ 1382c(a)(3)(A). Physical or mental impairments must be "of such severity that [the claimant] is

not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A); see id. § 1382c(a)(3)(B). In assessing a claimant's

impairments and determining whether they meet the statutory definition of disability, the

Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful

that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'"

Mongeur, 722 F.2d at 1037 (quoting Gold v. Sec'y of H.E.W., 463 F.2d 38, 41 (2d Cir. 1972)).

The Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or

medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by

the claimant or others; and (4) the claimant's educational background, age, and work

experience." Id. (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per

curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation

process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d

Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity." 20

6

C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. § 416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled. Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R § 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point scaled of none, one or two, three, or four or more." Id. (internal quotations, alterations, and citations omitted).

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. § 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. § 416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017, the SSA's regulations required application of the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant relationship with the claimant. See 20 C.F.R. § 416.927(d)(2); see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004). Under the treating physician rule, an ALJ was required to provide her reasoning if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources.

Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588-89 (S.D.N.Y. 2000). In addition, under the treating physician rule, a consultative physician's opinion was generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017 (such as Natal's application in this case). See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869-70, 2017 WL 168819 (Jan. 18, 2017). "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." Velasquez, 2021 WL 4392986, at *19 (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[3] 20 C.F.R. §416.920c(a); see also Young v. Kijakazi, No. 20-CV-03606 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021). Instead, an ALJ must consider all medical opinions in the record and "evaluate the persuasiveness" based on five "factors": (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any "other" factor that "tend[s] to support or contradict a medical opinion." 20 C.F.R. § 416.920c(a)-(c).

---

[3] The new regulations define "prior administrative medical finding" as: a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, including but not limited to: (i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are an adult, your [RFC]; (v) Whether your impairment(s) meets the duration requirement; and (vi) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim." 20 C.F.R. § 416.913(a)(5).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. § 416.1520c(a)-(b). Under the new regulations, the ALJ must "explain," in all cases, "how [he] considered" both the supportability and consistency factors, as they are "the most important factors." Id. § 416.920c(b)(2); see also Young, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors); Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," the "same factors" that formed the foundation of the treating physician rule). With respect to the supportability factor, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." Vellone v. Saul, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 416.920c(c)(1)); see Rivera, 2020 WL 8167136, at *16 (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." Vellone, 2021 WL 319354, at *6 (citing 20 C.F.R. § 416.920c(c)(2)).

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion of a medical source. 20 C.F.R. § 416.920c(b)(2). If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how she considered the three remaining factors. See id.

10

§ 416.920c(b)(3); see also Velasquez, 2021 WL 4392986, at *20. Thus, "[a]lthough the new

regulations eliminate the perceived hierarchy of medical sources, deference to specific medical

opinions, and assigning 'weight' to a medication opinion, the ALJ must still 'articulate how [she]

considered the medical opinions' and 'how persuasive [she] find[s] all of the medical opinions.'"

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5

(N.D.N.Y. Oct. 1, 2020) (citations omitted). "If the ALJ fails adequately to 'explain the

supportability or consistency factors,' or bases [his] explanation upon a misreading of the record,

remand is required." Rivera, 2020 WL 8167136, at *14 (quoting Andrew G., 2020 WL 5848776,

at *9).

Courts considering the application of the new regulations have concluded that "the

factors are very similar to the analysis under the old [treating physician] rule." Velasquez, 2021

WL 4392986, at *20 (quoting Dany Z. v. Saul, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); see also

Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9

(S.D.N.Y. Jan. 29, 2021) (collecting cases considering the new regulations and concluding that

"the essence" of the treating physician rule "remains the same, and the factors to be considered

in weighing the various medical opinions in a given claimant's medical history are substantially

similar"), report and recommendation adopted by, 2022 WL 717612 (Mar. 10, 2022). "This is

not surprising considering that, under the old rule, an ALJ had to determine whether a treating

physician's opinion was supported by well-accepted medical evidence and not inconsistent with

the rest of the record before controlling weight could be assigned." Acosta Cuevas, 2021 WL

363682, at *9; see also e.g., Andrew G., 2020 WL 5848776, at *5 (noting that "consistency and

supportability" were the foundation of the treating physician rule).

<u>Claimant's Credibility</u>

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. <u>Osorio v. Barnhart</u>, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'" <u>Id.</u> (quoting <u>Aponte v. Sec'y of Health and Hum. Servs.</u>, 728 F.2d 588, 591 (2d Cir. 1984)) (first alteration in original). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Pena v. Astrue</u>, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting <u>Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" <u>Id.</u> (quoting <u>Mimms v. Heckler</u>, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. <u>Genier</u>, 606 F.3d at 49 (2d Cir. 2010). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. <u>Id.</u> First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. <u>Id.</u>; <u>see also</u> 20 C.F.R. § 416.929(b). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." <u>Id.</u> (quotation omitted); <u>see also</u> 20 C.F.R. § 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

## B. **The ALJ's Decision**

On July 10, 2019, the ALJ issued his decision, R. at 13-30, finding that Natal was not disabled under the Act. Id. at 16. The ALJ began by explaining the five-step process for determining whether an individual is disabled. Id. at 17-18.

At step one, the ALJ found that Natal had not engaged in substantial gainful activity since May 22, 2017. Id. at 18. At step two, the ALJ found that Natal had eight severe impairments: (1) major depressive disorder; (2) cannabis use disorder; (3) cocaine use disorder; (4) alcohol use disorder; (5) asthma; (6) hypertension; (7) left shoulder pain (etiology unknown); and (8) hypercholesterolemia. Id.

At step three, the ALJ found that Natal "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926)." Id. In assessing Natal's mental impairments, the ALJ applied evidence in the record to each of the "four broad functional areas" (known as "paragraph B" criteria), including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Id. at 18-19. The ALJ concluded that

Natal's mental impairments caused moderate limitations in all four of the functional areas. Id. at 19. The ALJ concluded that because Natal's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." Id. at 20. Additionally, the ALJ determined that Natal does not meet the "paragraph C" criteria because "[t]here is no indication in the medical record that the claimant's impairment has been characterized by the specific conditions listed in the 'paragraph C' criteria." Id. Lastly, the ALJ found that Natal's asthma does not meet Listing 3.03, Natal's hypertension does not meet any of the cardiovascular listings, and Natal's left shoulder pain does not meet Listing 1.02 related to major joint dysfunction. Id. at 20-21.

Before proceeding to step four, the ALJ found that Natal maintained the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b), limited to occasional reaching overhead with the left hand; climbing ramps and stairs, balancing, stooping, and kneeling." Id. at 21. Specifically, the ALJ found that Natal "can never climb ladders, ropes or scaffolds; crouch; and crawl"; Natal can "have occasional exposure to extreme cold and heat, to wetness and humidity, and to environmental irritants (i.e., fumes, odors, gases & dusts)"; Natal "must avoid all use of hazardous machinery and all exposure to unprotected heights"; and Natal's work "is limited to simple, routine tasks with only occasional decision making required; to only occasional changes in the work setting; and to only occasional interaction with the public, coworkers and supervisors." Id.

In considering Natal's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the

claimant's functional limitations." Id. The ALJ analyzed Natal's impairments, and after

considering the evidence, found that even though Natal's "medically determinable impairments

could reasonably be expected to cause the alleged symptoms," Natal's "statements concerning

the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent

with the medical evidence and other evidence in the record." Id. The ALJ also independently

evaluated each of the medical opinions and prior administrative medical findings, and

determined whether each opinion was "persuasive," "less persuasive," or "unpersuasive." Id. at

22-23.

   At step four, the ALJ found that Natal was unable to perform his past relevant work, as a

furniture mover or a sorter. Id. at 23. At step five, the ALJ considered Natal's "age, education,

work experience, and [RFC]," and found that "there [were] jobs that exist in significant numbers

in the national economy that [Natal] [could] perform." Id. at 24. Based on testimony from a

vocational expert ("VE") and in conjunction with the Medical-Vocational Guidelines, the ALJ

concluded that Natal was "not disabled" because he was "capable of making a successful

adjustment to other work that exists in significant numbers in the national economy." Id. at 25.

The ALJ cited the VE's testimony that given Natal's age, education, work experience, and RFC,

such an individual would be able to perform work as a: (1) photocopy machine operator (DOT

207.685-014); (2) marker (DOT 209.587-010); or (3) produce weigher (DOT 299.587-010). Id.

at 24. Accordingly, the ALJ concluded that Natal "has not been under a disability" within the

meaning of the Act "since May 22, 2017, the day the application was filed." Id. at 25 (citing 20

C.F.R. § 416.920(g)).

C. **Analysis**

Natal contends that the ALJ's RFC determination is not supported by substantial evidence for two reasons. First, Natal argues that the ALJ failed to properly evaluate the medical opinions in the record. Pl.'s Br. at 9-10. And second, Natal contends that the ALJ failed to properly evaluate his subjective complaints and medication history. Id. at 11-12. Neither argument has merit. Accordingly, the Commissioner's cross-motion for judgment on the pleadings is granted and the ALJ's decision is affirmed.

    1.   The ALJ properly evaluated the medical opinions of Drs. Kahn, Flach, Engelberg, and Bouchard-Burns.

After his assessment of the medical evidence, the ALJ determined that Natal's RFC is limited to simple, routine tasks with only occasional interaction with the public, coworkers, and supervisors. R. at 21. That determination is supported by substantial evidence.

Beginning with Dr. Kahn, the ALJ found the opinion persuasive because it was "supported by and consistent with the evidence of record." Id. at 23. A review of the record demonstrates that Dr. Kahn's opinion that Natal has "moderate" limitations interacting with others is supported by treatment records and other evidence. Id. at 576-78, 581. Dr. Kahn relied on Nurse Practitioner Chang's psychiatric evaluations from August 14, 2017, to December 15, 2017. Id. at 359-64, 374-76. On August 14, 2017, Chang reported that Natal "feels paranoid" and "is afraid of other people taking advantage of him or being fake with him." Id. at 359. Nurse Chang also reported that Natal has a fear of abandonment and intimacy due to a "fear of rejection" and that he "prefers to be alone due to a fear of betrayal." Id. Nurse Chang's progress notes from December 15, 2017, state that Natal continues to experience symptoms of depression, anxiety, and paranoia. Id. at 374.

Dr. Kahn also relied on treatment records from Licensed Clinical Social Workers Eva Spears-Smith and Joel Torres, from May 12, 2018, to August 18, 2018. Id. at 399-414, 584. Those records indicated that Natal had a history of alcohol, marijuana, cocaine, and tobacco use, but that it had been two years since Natal had used alcohol and marijuana, six years since he had used cocaine, and "a little over a year" since he smoked a cigarette. Id. at 401. In an Initial Intake Assessment conducted by Spears-Smith on May 12, 2018, Natal denied having trouble controlling his anger or ever losing a job or relationship because of trouble controlling anger. Id. at 403. In the assessment, Natal also denied ever seriously hurting another person or thinking about hurting another person in the last six months. Id. Additionally, Licensed Clinical Social Worker Torres, in his treatment plan for Natal from September 16, 2018, reported that Natal had made "excellent progress" in "reduc[ing] [his] depressive symptoms through continued weekly therapy and stabilizing medication." Id. at 411-12. Furthermore, Torres reported that as of September 16, 2018, Natal had made partial progress on practicing "coping skills, including problem solving and emotional regulation." Id. at 412. Lastly. Dr. Kahn also relied on progress notes from Nurse Practitioner Ansell Horn from January 26, 2017. Id. at 450, 584. Horn found that it would be better for Natal to "remain active, working, for mental and physical health." Id. at 450. Based on those treatment records, Dr. Kahn found that Natal could "interact with others when he maintains abstinence." Id. at 584. And consistent with that opinion, Natal testified, on March 22, 2019, that he has been "clean" for two and a half years. Id. at 54.

Dr. Kahn's opinion that Natal had "moderate limitations" interacting with others is also consistent with, and supported by, other evidence in the record. In August 2017, State Agency Psychological Consultant Dr. K. Gawley opined that Natal was "moderately" limited in his abilities to interact appropriately with the general public, accept instruction, and respond

appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Id. at 68. This evidence, along with the previously discussed opinions of Licensed Clinical Social Workers Spears-Smith and Torres support Dr. Kahn's conclusion that Natal had "moderate" limitations in interacting with others and therefore provides substantial evidence for the ALJ's RFC determination that Natal could have "occasional" interactions with coworkers and the public.

Next, Dr. Flach opined that Natal may have "mild" to "moderate" problems adequately interacting with supervisors, coworkers, and the public. Id. at 552, 556. The ALJ found Dr. Flach's opinion persuasive, because it was also "supported by and consistent with evidence of the record." Id. at 23. Indeed, Dr. Flach's opinion that Natal had "moderate" problems interacting with others is consistent with Dr. Kahn's opinion and the evidence relied on by Dr. Kahn. What's more, Dr. Flach's opinion is supported by his evaluation of Natal in April 2019. Id. at 550. During that evaluation, Natal reported that he had anxiety and "concentration problems." Id. But Natal also reported that he takes public transportation, "socializes with one good friend," and "gets along with his family." Id. at 552. Additionally, in his Function Report from July 4, 2017, Natal reported that he's had "trouble socializing with others, but not all the time[]." Id. at 216. Further, Natal reported, in his Function Report and during his testimony to the ALJ, that he goes outside every day, takes public transportation, and visits his sister and her children "a couple of times a week." Id. at 52-53, 211-12. Additionally, a couple of times a week, Natal visits the park and the library. Id.

The ALJ also considered the consultative psychiatric evaluation of Dr. Engelberg and the opinion of Dr. Bouchard-Burns, but did not find those opinions persuasive. Id. at 23. Dr. Engelberg conducted a psychiatric evaluation of Natal on July 25, 2017, and concluded that

Natal was significantly impaired in his ability to interact adequately with supervisors, coworkers, and the public. Id. at 293, 296. Dr. Bouchard-Burns determined that Natal would have marked limitations interacting appropriately with the general public, asking simple questions or receiving assistance, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. Id. at 418-19. Additionally, Dr. Bouchard-Burns found that Natal would have extreme limitations accepting instructions and responding appropriately to criticism from supervisors and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. Id. at 419.

The ALJ reasonably found Dr. Bouchard-Burns' and Dr. Engelberg's opinions unpersuasive because other evidence in the record indicated that Natal was not so limited in his ability to interact with others. Indeed, Natal's own statements contradicted the opinions of Dr. Bouchard-Burns and Dr. Engelberg. For instance, Natal reported in his June 28, 2017 Function Report that he went outside almost every day and traveled by using public transportation. Id. at 211. Natal also indicated that he goes to appointments, his sister's house, therapy, parks, and the library "a few times a week." Id. at 212. Likewise, Natal himself indicated that his "trouble socializing with others" is "not all the time[]," and he "socializes with one good friend." Id. at 216, 552.

Contrary to Natal's argument, the ALJ's RFC determination did not "fail to duly explain his deviation from favorably-valued opinions" or "impermissibly 'split the difference'" between the opinions of Dr. Kahn and Dr. Flach. Pl.'s Br. at 9. The ALJ found that Natal could "occasionally" interact with the public, coworkers, and supervisors. R. at 21. That finding is consistent with the opinions of Dr. Kahn and Dr. Flach, both of whom found that Natal had only "moderate" or "mild" limitations in interacting with the public, coworkers, and supervisors. Id. at

556, 576. An RFC finding is within the province of the ALJ, <u>Curry v. Comm'r of Soc. Sec.</u>, 855 F. App'x 46, n.3 (2d Cir. 2021), and the ALJ's determination need "not perfectly correspond with any of the opinions of medical sources cited in his decision," <u>Matta v. Astrue</u>, 508 F. App'x 53, 56 (2d Cir. 2013). Further, an ALJ is "not required, in an RFC finding, to mirror exactly the limitations expressed in a medical opinion to which the ALJ has given significant weight." <u>Hemenway v. Comm'r of Soc. Sec.</u>, No. 19-CV-268 (TPK), 2020 WL 5107562, at 5* (W.D.N.Y. Aug 31, 2020) (citing <u>Clemons v. Comm'r of Soc. Sec.</u>, No. 16-CV-0658 (ATB), 2017 WL 766901, at *6 (N.D.N.Y. Feb. 17, 2017).

A task that can be performed "occasionally" is a task that occurs from very little up to one-third of the time. <u>See</u> <u>Selian</u>, 708 F.3d at 422 (quoting Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (SSA Jan. 1, 1983)). The ALJ's finding that Natal could occasionally interact with others is thus consistent with Dr. Kahn's opinion that Natal is "moderately" limited in his ability to work with others, as well as with Dr. Flach's opinion that Natal had only "mild" limitations in his ability to interact appropriately with others. <u>See</u> <u>Platt v. Comm'r of Soc. Sec.</u>, 588 F. Supp. 3d 412, 421 (S.D.N.Y. 2022) (ALJ accepted medical opinion that claimant had "moderate" limitations in interacting with others and properly incorporated corresponding restrictions into the RFC by limiting claimant to only "occasional" interaction with the general public and coworkers). The ALJ was permitted to translate the mild and moderate limitations expressed in the medical opinions into his own restrictions on Natal's ability to interact with others. <u>Hemenway</u>, 2020 WL 5107562, at *5 (finding an ALJ may translate the mild and moderate limitations expressed in a doctor's opinion into restrictions on a plaintiff's ability to perform more than simple, routine tasks and adapt to changes in the workplace).

In sum, the ALJ's decision reflects that he appropriately weighed all the medical evidence and crafted an RFC that is supported by substantial evidence in the record.

    2.  <u>The ALJ properly evaluated Natal's subjective complaints and medication history.</u>

The ALJ's analysis of Natal's subjective complaints is supported by substantial evidence. The ALJ also properly considered the objective medical evidence in the record as well as other evidence regarding the true extent of Natal's alleged symptoms.

As previously discussed, Natal's activities of daily living support the ALJ's finding that Natal was capable of performing light work, despite Natal's testimony that he suffered from depression, anxiety, and anger problems. R. at 44. For example, the consultative examination conducted by Dr. Allen Meisel revealed that Natal could "perform activities of daily living, including cooking, cleaning, laundry, and shopping." Id. at 538. Natal reported that he goes outside almost every day and takes public transportation. Id. at 52-53, 211. He also visits his sister and her children a couple of times a week. Id. at 212. Additionally, a couple of times a week, Natal goes to parks and the library. Id. Although Natal stated that he does not like being in crowded areas, Natal indicated in his Function Report that he does not have problems getting along with family, friends, neighbors, or others. Id. at 213. Further, Natal testified during his oral hearing on March 22, 2019, that he can shower and bathe by himself and perform household chores such as cleaning, cooking, and grocery shopping. Id. at 52, 55. And, Natal indicated in his Function Report that even during an anxiety attack, he is still able to engage in activities like shopping and driving. Id. at 216.

Moreover, the ALJ was not required to explicitly discuss Natal's periods of medication compliance. Natal argues that the ALJ "does nothing more than compare the opinion evidence with the subjective complaints" and "did not address Plaintiff's treatment, including periods

when Plaintiff was medication compliant." Pl.'s Br. at 11-12. However, the ALJ was not required to explicitly discuss every piece of evidence in the record in his decision. See Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.") (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). When "the evidence of record permits [the court] to glean the rationale of an ALJ's decision," the ALJ is not required to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Acevedo v. Saul, 577 F. Supp. 3d 237, 253-54 (S.D.N.Y. 2021) (quoting Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (internal citations omitted)). Here, the ALJ recognized that Natal had been treated for severe mental impairments and the ALJ discussed the clinical exam findings in his decision, along with the medical opinions about Natal's functional limitations given his treatment. R. at 21-23.

In any case, the record shows that Natal had periods where he failed to take his medication consistently, but nonetheless experienced relatively mild symptoms and his symptoms showed improvements when he complied with his medication regimen. On May 22, 2017, when Natal filed his application for "SSI," he had been taking Wellbutrin for depression since March 3, 2017. Id. at 287. But Natal reported to Nurse Practitioner Chang that during that period he was not taking the Wellbutrin consistently, because he would forget or was in a hurry. See id. at 288, 307, 311. Nevertheless, Natal noted that the medication was helpful, id., and he denied having any side effects or adverse reactions from the medication, id. at 288, 307, 311, 315, 319. Further, Nurse Chang reported on June 16, 2017, that Natal's mental condition had improved, despite his failure to consistently take the medication. Id. at 317. Natal again reported,

in February 2018, missing several doses of his medication. Id. at 384. Likewise, in April 2018,

June 2018, and August 2018, Natal reported that he had not taken his medication consistently. Id.

at 387, 390, 396. Yet, despite his failure to consistently take the medication, the record shows

improvements in Natal's condition or shows that he experienced relatively mild symptoms. For

example, during an August 2018 doctor's appointment, although Natal had not taken his

prescribed medication, he reported that his condition was "much improved" that day. Id. at 395-

96.

       Ultimately, the ALJ is "not required to accept the claimant's subjective complaints

without question"; he is permitted to discount Plaintiff's testimony and subjective statements

based on the record as a whole. See Genier, 606 F.3d at 49 (citations omitted). The ALJ

appropriately did so here, and for the reasons provided above, his final determination with

respect to Natal's subjective complaints was supported by substantial evidence. See Johnson, 563

F. Supp. 2d at 454 (holding that "[i]f the reviewing court finds substantial evidence to support

the Commissioner's final decision, that decision must be upheld").

## **CONCLUSION**

For the foregoing reasons, Natal's motion for judgment on the pleadings is **DENIED**, and

the Commissioner's cross-motion for judgment on the pleadings is **GRANTED**. The Clerk of

Court is respectfully directed to terminate the motions at ECF Nos. 23 and 25.

DATED:         September 26, 2023
               New York, New York


                              Respectfully submitted,



                              _____
                              VALERIE FIGUEREDO
                              United States Magistrate Judge